*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *DWAIN C. ANDERSON,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:11-cv-476-DBH* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

*REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI")
appeal raises the question of whether the administrative law judge supportably found the plaintiff
capable of performing work existing in significant numbers in the national economy.  The
plaintiff seeks reversal and remand on the grounds that the administrative law judge erred in
(i) impermissibly basing his residual functional capacity ("RFC") determination on his own lay
interpretation of raw medical evidence, (ii) improperly rejecting the opinions of three treating
practitioners, (iii) improperly evaluating the plaintiff's credibility, and (iv) failing to find a
severe impairment of post-traumatic stress disorder ("PTSD") or even to discuss the issue.  *See*
Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of
Errors") (ECF No. 9) at 3-14.  I recommend that the decision be affirmed.

The decision was issued on August 16, 2011, pursuant to two orders of this court dated
May 19, 2010, and October 8, 2010, vacating, at the commissioner's request, two prior decisions

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that
the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this
court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific
errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at
the Clerk's Office.   Oral argument was held before me on September 14, 2012, pursuant to Local Rule
16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant
statutes, regulations, case authority, and page references to the administrative record.

1

and remanding the plaintiff's case for further proceedings. *See* Record at 488-513, 577-78, 615-16. The first remand order, entered with respect to a January 22, 2008, decision denying an application for SSD benefits filed on December 29, 2004, *see id*. at 591-608, directed that the administrative law judge conduct a *de novo* hearing, reassess the opinion evidence of record, and formulate an RFC assessment accordingly, building a logical bridge from the evidence to the assessed RFC and explaining the weight afforded to various opinions of record and tethering functional limitations to the medical evidence, *see id*. at 615-16. The second remand order, entered with respect to a February 23, 2010, decision denying applications for SSD and SSI benefits filed on February 19, 2008, *see id*. at 7-15, directed that, upon remand, the case be assigned to an administrative law judge who would update the record, provide the plaintiff an opportunity for a *de novo* hearing, and consolidate the case with the plaintiff's earlier application, then awaiting a hearing pursuant to the court's earlier remand order, *see id*. at 577-78.

Post-remand, the administrative law judge obtained additional evidence, including materials from a new treating source, Erek S. Sherin, Ph.D., and presided at a hearing on June 28, 2011, during which the plaintiff, who was represented by his current counsel, testified. *See id*. at 1184-91, 1196-99, 1216-44. The plaintiff had previously testified at hearings held on December 10, 2007, *see id*. at 520-68, and on January 21, 2010, *see id*. at 21-66. No mental health expert was present at any of the three hearings. *See id*. at 21-22, 520-21, 1218-19.

Post-remand, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of a depressive disorder NOS [not otherwise specified], an anxiety disorder NOS,

and a personality disorder with inflexible, maladaptive personality traits, Finding 3, Record at 490; that he retained the RFC to perform a full range of work at all exertional levels, could understand and remember simple instructions, could execute simple tasks on a consistent schedule to complete a workday/workweek, could interact with coworkers and supervisors, could work in public areas but could only interact briefly and superficially with the general public, and could adapt to simple changes, Finding 5, *id.* at 493; that, considering his age (48 years old, defined as a younger individual, on his alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 512; and that he, therefore, was not disabled from January 16, 2004, his alleged disability onset date, through August 16, 2011, the date of the decision, Finding 11, *id.* at 513.[2]  The Appeals Council did not assume jurisdiction of the case after remand, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a) & (d), 416.1484(a) & (d); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

[2] "To be eligible to receive SSD benefits [a] plaintiff had to have been disabled on or before [his or] her date last insured[.]" *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999).  The plaintiff was insured through December 31, 2009, *see* Finding 1, Record at 490, and, therefore, for purposes of SSD benefits, had to prove that he was disabled on or before that date.

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.   20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process.  Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* (quoting Social Security Ruling 85-28).

## I.  Discussion

## A.  RFC Determination

The plaintiff first contends that the administrative law judge erred in relying, for purposes of his RFC determination, on four opinions of Disability Determination Services ("DDS") nonexamining consultants and two opinions of examining consultants that cannot stand as substantial evidence of his RFC.  *See* Statement of Errors at 3.  He argues that this is so because:

1.      The reports of the DDS nonexamining consultants address his condition only as of discrete periods of time totaling less than two and a half of the more than seven-year period at issue.  *See id*.  In any event, one of these consultants, Peter Allen, Ph.D., found the plaintiff's mental impairments nonsevere, and so his report does not support the administrative law judge's RFC determination.  *See id*.

2.      None of the DDS consultants had the benefit of review of the reports, records, and/or opinions of treating sources Dr. Sherin or Allen Drucker, M.Ed., or the bulk of the records or the opinion of treating source Marjorie Walsh, LCSW.  *See id*. at 4-5.

3.      Both consulting examiners, Donna Quinn, Ph.D., in a 2005 report, and David W. Booth, Ph.D., in a 2008 report, found potentially disabling limitations that the administrative law judge did not properly address.  *See id*. at 6.

4.      Although a medical expert was scheduled to appear at both the plaintiff's second and third hearings, none did.  *See id*. at 7.  This, in the plaintiff's view, reflects the administrative law judge's apparent preference to make his own lay analysis of the large body of medical evidence not previously reviewed by an expert.  *See id*.

5.      The administrative law judge failed to reconcile his finding in his 2010 decision that the plaintiff had a "moderate to marked" impairment in social functioning with his finding in his 2011 decision that he had only a "moderate" impairment in social functioning.  *See id*.

The plaintiff contends that the administrative law judge improperly relied on his own lay assessment of raw medical evidence and a negative credibility determination to determine the plaintiff's RFC.  *See id*. at 7-8; *see also, e.g.*, *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he

5

"is not qualified to assess residual functional capacity based on a bare medical record."); *Kresge v. Astrue,* Civil No. 09–248–B–W, 2010 WL 2024968, at *7 (D. Me. May 18, 2010) (rec. dec., *aff'd* June 22, 2010) (an RFC determination must be based on medical evidence, not credibility findings).

For the reasons that follow, I am unpersuaded that any of these arguments affords a basis for reversal and remand.

While, as the plaintiff notes, Dr. Allen's findings do not support those of the administrative law judge, he does not contest that the reports of the other DDS nonexamining consultants do.[3]  The question presented, therefore, is whether these DDS reports can stand as substantial evidence of the plaintiff's RFC.  "[T]he amount of weight that can properly be given the conclusions of non-testifying, nonexamining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted).  "In some cases, written reports submitted by non-testifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations omitted).

### 1. Review for Discrete Periods Based on Less Than Entire Record

As the plaintiff points out, *see* Statement of Errors at 3, in 2005 Dr. Lester assessed his condition only for the period from January 16, 2004, through July 22, 2005, *see* Record at 995, and in 2008 Drs. Lester and Houston assessed his condition only for the cumulative period from January 23, 2008, through December 4, 2008, *see id*. at 237, 372.  In addition, for purposes of their 2008 reports, Drs. Lester and Houston reviewed mental health records only from January

---

[3] The administrative law judge's RFC determination largely comports with two mental RFC assessments by DDS nonexamining consultant Lewis F. Lester, Ph.D., dated July 22, 2005, and May 16, 2008, and a mental RFC assessment by DDS nonexamining consultant David R. Houston, Ph.D., dated December 4, 2008. *Compare* Finding 5, Record at 493 *with id*. at 253, 388, 1011.

18, 2007, through the dates of their reports. *See id*. at 249, 384.[4]  Yet, every DDS consultant's report necessarily is a snapshot of a claimant's condition during a discrete period of time.  That, in itself, does not prevent an administrative law judge's reliance on such a report as substantial evidence of a claimant's RFC.  *See, e.g., Ferland v. Astrue*, No. 11-cv-123-SM, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011) ("It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record.  However, an ALJ may rely on such an opinion where the medical evidence postdating the reviewer's assessment does not establish any greater limitations or where the medical reports of claimant's treating providers are arguably consistent with, or at least not clearly inconsistent with, the reviewer's assessment.") (citations and internal quotation marks omitted).

In this case, after setting forth a detailed summary of the voluminous record of the plaintiff's mental health treatment for the period from at least January 2005 through June 15, 2011, *see* Record at 495-502, the administrative law judge supportably deemed his condition to have been essentially unchanged as measured by recorded observations over that period, *see id*. at 505 ("The record contains few reports of observed difficulties by treating and examining medical practitioners.  [The plaintiff] is generally reported to be friendly, cooperat[ive], and appropriately dressed and kempt except for longer hair and beard.  Only rarely is anger reported to have been inappropriately exhibited to the practitioner first hand.  He is generally described as having no significant[] difficulties with cognition.  His concentration, attention, and memory are

---

[4] In his December 2004 SSD application, the plaintiff claimed a disability onset date of January 16, 2004.  *See* Record at 591.  However, in his February 2008 SSD and SSI applications, he claimed a disability onset date of January 23, 2008.  *See id*. at 7.  After the cases were consolidated on remand, the administrative law judge issued a decision covering the entire period from January 16, 2004, through August 16, 2011, the date of the decision.  *See* Finding 11, *id*. at 513.

generally found to be normal."), and by the "great many activities" he pursued, *see id*. at 506 (plaintiff successfully raised his daughter as a single parent, actively used the computer and internet, rebuilt automobiles, performed other repairs on vehicles, did odd jobs for money, played music with others, wrote music, invented things, researched how to patent his inventions, and successfully navigated bureaucracies in obtaining treatment, housing, food, and financial assistance for himself and his daughter).[5]

For the same reasons, he supportably found that the raw medical evidence postdating the DDS nonexamining consultants' reports was essentially cumulative and, therefore, did not call into question their conclusions regarding the severity of his mental health limitations. *See id*. at 506-07.

This analysis did not exceed the bounds of the administrative law judge's competence as a layperson. *See, e.g., Breingan v. Astrue,* No. 1:10–cv–92–JAW, 2011 WL 148813, at * 6 n. 5 (D. Me. Jan. 17, 2011) (rec. dec., *aff'd* Feb. 22, 2011) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes.") (citations omitted).

### 2.  Handling of Consulting Examiner Reports

Nor did the administrative law judge err in his handling of Dr. Quinn's and Dr. Booth's conclusions.  An administrative law judge is obliged to weigh the opinion of an examining consultant in accordance with specified factors, "such as the consultant's medical specialty and

---

[5] It is noteworthy that Dr. Lester also assessed similar limitations for the plaintiff in 2005 and 2008.  *Compare* Record at 253 *with id*. at 1011.

expertise in our rules, the supporting evidence in the case record, [and] supporting explanations the medical or psychological consultant provides," and to explain the weight afforded to such an opinion. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the commissioner].").  The administrative law judge fulfilled this requirement with respect to the opinions of Drs. Quinn and Booth.

The administrative law judge acknowledged that, although Dr. Quinn found the plaintiff likely to be cooperative in following work rules, likely to function adequately with coworkers, supervisors, and the public, likely to be able to manage a mild level of work-related stress, and able to understand, remember, and carry out both simple and detailed job instructions, she stated that he had "experienced a level of depression and social withdrawal that may make it difficult for him to initiate motivated behavior" and that his current level of depression might "negatively impact[]" his ability to be a reliable worker.  Record at 955; *see also id*. at 496-97.

Nonetheless, he noted that, like Dr. Lester (who had the benefit of review of Dr. Quinn's report), he did not interpret that report to impose additional limitations beyond those found in his RFC.  *See id*. at 511; *see also id*. at 1007, 1011.  He explained that he had reached this conclusion because Dr. Quinn (i) "did not state that the difficulties would prohibit work" within that RFC, (ii) "did not state what kind of stress the [plaintiff] would have difficulty with[,]" and (iii) implicitly opined, by setting the plaintiff's Global Assessment of Functioning ("GAF") score at 68, that there were no significant psychological barriers to his performance of most work.  *Id*.

at 511.[6]  In so doing, he adequately considered Dr. Quinn's opinion and explained the weight
afforded to it.

In similar fashion, the administrative law judge acknowledged that Dr. Booth indicated
that the plaintiff would have difficulty concentrating on tasks, persisting with what was asked of
him, and responding in an appropriate way to others in a work setting.  *See id*. at 499; *see also id*.
at 234.  However, he noted that Dr. Booth did not state that these difficulties would significantly
limit the plaintiff's ability to function adequately in the workplace and had, in fact, assessed a
GAF score of 68, indicating mild symptoms and/or functional limitations.  *See id*. at 499.  In so
doing, he adequately considered Dr. Booth's opinion and explained the weight given to it.

The plaintiff protests that "[t]he decision attempts to disclaim these specific limitations
[of Drs. Quinn and Booth] by citing the relatively high GAF score the evaluators cite, but the
specific limitations override the general, undifferentiated GAF."  Statement of Errors at 6 n.3.
He cites no authority for this proposition, which I do not find self-evident.  One would think that
any specific limitations assessed by a consultant should be construed in a manner consistent
with, rather than trumping, a GAF score.  In any event, as discussed above, the GAF score was
not the only basis on which the administrative law judge declined to adopt certain limitations
suggested by Drs. Quinn and Booth.[7]

---

[6] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American
Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM-IV-
TR"), at 32.  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological,
social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent
danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious
suicidal act with clear expectation of death).  *Id.* at 34.  A GAF score of 61 to 70 reflects "[s]ome mild symptoms
(e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g.,
occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful
interpersonal relationships."  *Id.* (boldface omitted).
[7] The Quinn report, as both Dr. Lester and the administrative law judge interpreted it, supports the administrative
law judge's RFC finding.  *Compare* Finding 5, Record at 493 *with id.* at 955.

### 3.  Failure To Call Medical Expert at Hearing

To the extent that the plaintiff complains that the administrative law judge failed to call a medical expert at his post-remand hearing, *see* Statement of Errors at 7, nothing in the relevant regulations, this court's remand orders, or the Disability Review Board's or the Appeals Council's remand orders, required that he do so.  *See, e.g.*, *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 5 (1st Cir. 1987) ("Use of a medical advisor in appropriate cases is a matter left to the [commissioner's] discretion; nothing in the Act or regulations requires it."); Record at 577-78, 581-82, 615-16, 623-24.  The omission would have been material only if the administrative law judge's RFC finding was otherwise unsupported by substantial evidence.  However, as discussed above, it was so supported.

### 4.  Failure To Reconcile Conflicting Findings in Decisions

To the extent that the plaintiff complains that the administrative law judge failed to reconcile his finding in 2010 that the plaintiff had moderate to marked limitations in social functioning with his finding in 2011 that he had only moderate such limitations, he cites no authority for the proposition that the administrative law judge had any obligation to do so.  *See* Statement of Errors at 7.  My research indicates that "[t]o determine if the ALJ's decision violated the law of the case and the rule of mandate doctrines, it is necessary to examine the court's prior remand order to determine the scope of the order."  *Sanchez v. Astrue*, No. 1:11-cv-00254-SKO, 2012 WL 3704756, at *11 (E.D. Cal. Aug. 27, 2012).  The court's remand orders directed that the administrative law judge "reassess the opinion evidence of record and formulate a residual functional capacity assessment accordingly[,]" Record at 615, and issue "a new decision" on the consolidated cases, *id.* at 577.  The orders of the Decision Review Board and the Appeals Council implementing the court's remand orders likewise contemplated a fresh start,

11

without deference to, or need to explain, findings made in earlier decisions. *See id.* at 581-82, 623-24. The administrative law judge, therefore, had no obligation to reconcile or explain any deviation from either earlier decision.

In sum, the administrative law judge did not arrive at his determination of the plaintiff's RFC by impermissibly interpreting raw medical evidence or relying on a negative credibility finding. Rather, he relied on multiple reports of DDS consultants, adopted after exhaustive discussion of why those reports comported with the medical and other evidence of record as a whole. Those reports, in turn, supplied substantial evidence of the plaintiff's RFC.

### B.  Treatment of Treating Sources

The plaintiff next takes issue with the administrative law judge's rejection of the RFC opinions of three treating sources, Dr. Sherin, Mr. Drucker, and Ms. Walsh, on the bases that he (i) wrongly focused on the plaintiff's past work as inconsistent with treating sources' opinions, (ii) criticized Dr. Sherin's opinions without recontacting him for an explanation, (iii) ignored the consistency of the treating sources' opinions that the plaintiff had disabling impairments, and (iv) erroneously found the plaintiff's activities inconsistent with the disabling impairments found by the treating sources, although the record contained evidence of the sort of uncontrolled, angry outbursts that the sources found rendered the plaintiff unemployable, and several DDS consultants found the plaintiff's allegations of a hot temper, short fuse, and the like largely credible. *See* Statement of Errors at 8-11.  I find no error.

The commissioner's regulations promise that controlling weight will be given to the opinion of a treating source "[i]f [the commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the claimant's] case record[.]"  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

However, controlling weight can never be given to opinions on issues reserved to the commissioner, such as whether a claimant is disabled or is capable of working only part-time. *See id*. §§ 404.1527(e)(2)-(3), 416.927(e)(2)-(3); *Hallock v. Astrue*, No. 2:10-cv-374-DBH, 2011 WL 4458978, at *6 (D. Me. Sept. 23, 2011) (rec. dec., *aff'd* Oct. 12, 2011).

Nonetheless, even with respect to issues reserved to the commissioner, an administrative law judge must supply "good reasons" for discounting the opinion of a treating source.  *See, e.g.,* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("[The commissioner] will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

Treating source opinions are evaluated based on several enumerated factors: (i) length of the treatment relationship and frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability — *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the treating physician is offering an opinion on a medical issue related to his or her specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

After carefully summarizing the opinions of Ms. Walsh, Mr. Drucker, and Dr. Sherin to the effect that the plaintiff had disabling mental limitations, *see* Record at 499-502, the administrative law judge supplied multiple reasons for rejecting them both collectively, *see id*. at 508-09, and individually, *see id*. at 509-11. The plaintiff's arguments fall short of demonstrating that the administrative law judge failed to give due consideration to these opinions or to supply good (indeed, ample) reasons for discrediting them.

### 1.   Consideration of Past Work

The plaintiff faults the administrative law judge for rejecting the Drucker, Walsh, and Sherin opinions without the aid of a medical expert and on the basis of a negative credibility finding, taking particular issue with the administrative law judge's observation that:

> Most importantly, the practitioners appear to ignore the fact that the [plaintiff] was able to work his way up from laborer to district manager over 11 years at his last job. His ability to do so is not explained by any of the practitioners. None of the practitioners ha[s] indicated that the [plaintiff's] condition has worsened since he quit his last job and they generally cited his many jobs of short duration as support for their findings, apparently ignoring the fact that he worked successfully for 11 years at his last job.

Statement of Errors at 8 (quoting Record at 508).

The plaintiff contends that this analysis misses the mark for three reasons: that (i) the work is irrelevant, because he performed it prior to the time that he alleges he became disabled, (ii) the administrative law judge, in effect, acknowledged that his condition worsened subsequent to his employment by finding him unable to perform past relevant work, exposing this rationale as result-oriented and disingenuous, and (iii) his treating sources had no reason to address the 11-year period during which he worked his last job because they did not then treat him. *See id*. at 9. He argues that, in any event, pursuant to SSR 96-5p, the administrative law judge should have recontacted those treating sources for an explanation before holding this alleged discrepancy

against them, noting that the Appeals Council suggested that clarifications be obtained from treating sources. *See id.*

However, both Mr. Drucker and Dr. Sherin took the plaintiff's work history into account in drawing conclusions regarding his work capacities during the time period he alleges that he was disabled. Mr. Drucker stated that the plaintiff met five of the nine standards for schizoid personality disorder, which he felt explained his "problems in acquiring and maintaining employment opportunities[,]" and that his personality disorder in combination with his attention deficit hyperactivity disorder ("ADHD") would make it "impossible for him to effectively seek and maintain employment." Record at 393.

In his initial clinical assessment, Dr. Sherin stated that the plaintiff had "a history of a variety of jobs, mostly unskilled, but with some work as a sales person and some work doing entry level management for a time." *Id.* at 1185. He stated, "[a]ll these positions eventually led to his being either fired or laid off." *Id.* He added that, although, "[i]n terms of actual job performance, it seems that [the plaintiff] did quite well[,]" it appeared that "he '<u>over-controlled</u>' his angry and aggressive thoughts and feelings which eventually resulted in some kind of inappropriate and unacceptable verbal outburst which then led to his supervisors dismissing him." *Id.* at 1186 (emphasis in original). Dr. Sherin concluded that "the social and emotional issues pertaining to employment adjustment and adaption eventually always caught up with him." *Id.* In an addendum to that report, Dr. Sherin elaborated:

> All [the plaintiff's] employment experiences have elements of conflict either overt or more likely covert. He tries to adjust. He hopes he will find secure employment and validation for the work he is doing. However, repeatedly he self-sabotages himself which leads to his being laid off or being fired. He is then left with feelings of being undervalued and worthless. The cyclic aspect of this has gone on repeatedly for [the plaintiff] in most parts of his adolescent and adult functioning. . . . By [his early or young adulthood], or long before, the "d[i]e was cast".

*Id*. at 1198.  Finally, in a later clinical update, Dr. Sherin wrote:

> [The plaintiff] was able to look for, find and secure employment for himself in his late adolescence.  His employment history indicates that he has held multiple positions in a wide variety of jobs types and descriptions.  However, his issue has never been about securing employment.  Instead, he has continually struggled with "maintaining employment" and beyond that managing the "employment environment and experience".  As stated in an earlier document [the plaintiff] knows how to work and is in fact a rather satisfactory worker when given the responsibilities of performing specific tasks.
>
> [The plaintiff] brings with him to any employment setting his own set of work challenges and issues.  It appears regardless of what kind of employment, or which employer, he will inevitably collide with his PTSD history regarding how he copes with and establishes himself in terms of the social demands which are in some respects required in all employment environments.  Sometimes it is a relatively minor intersection with a co-worker or colleague which triggers him.  At other junctures it could be a major confrontation with a supervisory person who elicits unseen, maybe even unheard, reactivity from [the plaintiff] which leads to his departure from that job setting either by his own choice or by his being dismissed.

*Id*. at 1216-17.

In light of the importance ascribed to the plaintiff's job history by these treating sources, particularly Dr. Sherin, the administrative law judge validly discounted their opinions in part on the basis that they seemingly had not addressed his ability to work for one employer for 11 years.  Moreover, as the plaintiff's counsel acknowledged at oral argument, the plaintiff was not fired or laid off from his longtime job but, instead, resigned.  *See id*. at 929.

The administrative law judge had no duty to recontact treating sources regarding this point prior to relying in part on this discrepancy to discredit their opinions.  The duty to recontact a treating source for clarification as to an RFC opinion is triggered only when (i) "the evidence does not support a treating source's opinion[,]" and (ii) "the adjudicator cannot ascertain the basis of the opinion from the case record[.]"  *See* SSR 96–5p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2012), at 127; *see also, e.g., Hodgkins v. Barnhart*,

16

No. 03-179-P-H, 2004 WL 1896996, at *3 (D. Me. Aug. 25, 2004) (rec. dec., *aff'd* Sept. 15, 2004) ("It is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to recontact that physician.") (citation and internal quotation marks omitted); *Alejandro v. Barnhart,* 291 F. Supp.2d 497, 512 (S.D. Tex. 2003) ("SSR 96–5p does not say that ALJs must recontact a treating physician whenever the record as a whole (or a treating physician's particular contribution to the record) fails to support his opinions.  To the contrary, SSR 96–5p requires recontact solely when both (a) the record fails to support a treating source's opinion, and (b) the basis of the treating source's opinion is unascertainable from the record.  The ALJ does not express confusion regarding the basis of Dr. Igoa's opinion; instead, she concludes that the purported basis for his opinion does not lend any support to said opinion.  This distinction is dispositive[.]") (citation omitted).

Here, as in *Alejandro*, the administrative law judge did not express confusion regarding the bases for these treating sources' opinions but, rather, found them unsupported by other evidence of record.  *See* Record at 508-12.

In any event, a default in the duty to recontact is reversible error not only when an adjudicator cannot ascertain the basis of a treating source's opinion from the case record but also when that record is inadequate to make a determination of disability.  *See, e.g., Frost v. Barnhart,* No. 03-215-P-H, 2004 WL 1529286, at *11 (D. Me. May 7, 2004) (rec. dec., *aff'd* June 3, 2004).  Here, the voluminous record was adequate for that purpose.

### 2.   Failure To Recontact Dr. Sherin

In like vein, the plaintiff complains that the administrative law judge erroneously criticized Dr. Sherin's opinion as lacking explanations without first recontacting him for clarification.  *See* Statement of Errors at 9-10.  Yet, again, as in *Alejandro*, these criticisms do

17

not reflect confusion as to the bases for Dr. Sherin's opinion, which Dr. Sherin explained in great detail. Rather, they reflect a conclusion that the opinion clashed with substantial evidence of record indicating that the plaintiff possessed greater work capacities than found by Dr. Sherin. *See, e.g.*, Record at 510 (observations by the administrative law judge that Dr. Sherin did "not seem to be aware that the [plaintiff] has reported to multiple therapists on multiple occasions . . . that he had stopped work after working 11 years because he chose to devote his time to his daughter and not because he could not adequately control his behavior at work" and that, if Dr. Sherin was aware of that 11 years of work, "his reports failed to explain why the [plaintiff] could maintain that work so long in the past but would be unable to maintain any employment now").

### 3. Consistency of Treating Source Opinions

The plaintiff next contends that the administrative law judge ignored the consistency of treating sources' opinions that he had disabling impairments, noting that consistency with the record as a whole is a critical factor in evaluating such opinions. *See* Statement of Errors at 10. Again, the administrative law judge committed no error. He acknowledged that the treating sources' assessments were consistent with each other and tended to support the plaintiff's allegations. *See* Record at 508. Nonetheless, for good reasons, he found them inconsistent with the record as a whole, including (i) objective documentation of the plaintiff's mental status and presentation, (ii) DDS consultants' findings, (iii) evidence that the plaintiff left his longtime job in 2004 because he felt that he could not simultaneously work and meet his responsibilities as a single parent of a very young child,[8] and (iv) evidence of activities by the plaintiff indicating that

---

[8] As counsel for the commissioner noted at oral argument, the plaintiff told treating sources on several occasions that he could either work or take care of his daughter but not both, tending to suggest that he acknowledged that he had the capacity to work. *See, e.g.*, Record at 1022, 1034, 1146, 1150. At oral argument, the plaintiff's counsel rejoined that, while the plaintiff made statements to the effect that he placed great value on caring for his daughter, he never said that he had the capacity to work, and one cannot draw a fair inference from those statements that he was capable of working. He noted that his client testified at hearing that he left work in 2004 because he was (*continued on next page*)

18

he possessed greater capacities than treating sources found him to have. *See id*. at 508-12.[9]

## 4.   Consideration of Plaintiff's Activities

The plaintiff finally faults the administrative law judge's finding that his activities were inconsistent with treating sources' assessment of disabling impairments, stating that the record is replete with evidence of his angry outbursts and that Dr. Lester found his allegations credible, while Dr. Booth noted that he would experience difficulty responding in an appropriate way to others in a work setting, where he would be expected to be impatient and angry. *See* Statement of Errors at 10-11.   He contends that "the record overwhelmingly supports that he has just the type of angry decompensation cited by the treating sources in finding disabling limitations." *Id*. at 11.

The administrative law judge's handling of this issue, as well, was adequate.   He acknowledged that the record contained evidence of angry and rude outbursts, including warnings dated January 6, 1994, November 7, 1995, and February 9, 1998, by the plaintiff's

_____

overwhelmed and felt the job was traumatic, and, although he hoped thereafter to secure a job, it did not work out. *See id*. at 1223-32.  He argued that this testimony was consistent with Dr. Sherin's diagnosis of a PTSD-related inability to sustain employment.  He added that, regardless of what the plaintiff said, treating sources had expressed the opinion that he had a disabling level of impairment.  Nonetheless, the administrative law judge reasonably construed the statements on which the commissioner relies as cutting against a finding of disability.

[9] As counsel for the commissioner observed at oral argument, there was evidence that, subsequent to the plaintiff's alleged onset date of disability, he engaged in such activities as working with cars, doing photography, writing songs, playing music with others, engaging in online searches, including a successful attempt to locate his father, attending school events, and performing in a play, which he also made efforts to promote. *See, e.g*., Record at 268, 270-72, 281-83, 953, 1033, 1048, 1064, 1071, 1148.  The plaintiff's counsel rejoined that the administrative law judge's reliance on these periods of relatively high functioning was misplaced because, as Dr. Sherin found, the plaintiff's PTSD eventually would cause him to decompensate when confronted with stressors.  In his statement of errors, the plaintiff likened PTSD to bipolar disorder, with respect to which the United States District Court for the District of New Hampshire held that it was error, given the episodic nature of that condition, for an administrative law judge to discredit treating provider opinions and the claimant's own complaints on the basis of the existence of "good days" without even considering whether the "good days" nonetheless were consistent with a bipolar disorder of disabling symptomatology. *See* Statement of Errors at 5 n.2; *Walsh v. Astrue*, No. 11-cv-108-SM, 2012 WL 941781, at *4-*6 (D.N.H. Mar. 20, 2012).  Nonetheless, when viewed against the backdrop of the record as a whole, including (i) relatively few recorded instances of rude and inappropriate behavior by the plaintiff at work or with treating sources, (ii) statements that the plaintiff made about the reasons that he stopped work, (iii) his lack of effort to seek other work, (iv) the opinions of DDS consultants, and (v) high GAF scores assessed by two examining consultants, the administrative law judge supportably considered the plaintiff's level of activity one of a constellation of factors cutting against his claim of disabling mental impairments.

longtime employer regarding his attitude or anger control, and that the 1995 warning stated that the plaintiff's employer had spoken to him several times about controlling his temper, *see* Record at 495, and that treatment notes revealed some inappropriate behavior, *see id*. at 506. Yet, he found that (i) the plaintiff had "controlled his temper well enough to keep his job and had only three incidents requiring warnings about anger control from 1994 through 1998 and none thereafter" and "was able to keep his job until he quit in 2004[,]" *id*. at 504-05, and (ii) treating providers generally reported that the plaintiff was friendly and cooperative, with anger only rarely reported to have been exhibited to a practitioner firsthand, *see id*. at 505.   These observations are supported by the longitudinal record.

That Dr. Lester found the plaintiff's allegations "generally" or "largely" credible, *see id*. at 249, 253, 1007, 1011, does not help the plaintiff.  Despite this, the administrative law judge made an RFC determination largely consistent with that of Dr. Lester.  *Compare* Finding 5, Record at 493 *with id*. at 253, 1011.  With respect to Dr. Booth's report, as discussed above, the administrative law judge adequately considered and discounted that portion in which Dr. Booth found that the plaintiff likely would experience difficulty responding in an appropriate way to others in the work setting.

This point of error, thus, provides no basis for reversal and remand.

## C.  Credibility Finding

The plaintiff next contends that the administrative law judge improperly evaluated his credibility by ignoring the preponderance of treating source opinion, the positive credibility findings and consistent statements from DDS consultants on whose opinions he relied, and the assertedly overwhelming record support for the sort of angry outbursts that he had described. *See* Statement of Errors at 11-12.  He further faults the administrative law judge's misplaced

20

emphasis on (i) work that he performed prior to his alleged onset date of disability and (ii) his ongoing ability to care for his daughter, neither of which, in his view, supports a finding of capacity to work subsequent to his onset date of disability.  *See id*. at 12.  He finally observes that (i) a letter from Emanuel Pariser, Ph.D., supports his credibility, and (ii) his activities of daily living reveal some abilities but not an ability to persist and, accordingly, do not contradict the basis of his alleged disability.  *See id*.  With respect to the latter point, he notes that, according to Dr. Sherin, his symptomatology is "variable, unpredictable and episodic in its presentation[,]" a characteristic of PTSD.  *See id*. (quoting Record at 1197-98).

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."  *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).  In this case, the administrative law judge provided an unusually exhaustive catalog of reasons for his decision to discount the plaintiff's credibility.  *See* Record at 503-05.

To the extent that the plaintiff reiterates points made in the context of his challenge to the administrative law judge's handling of treating source opinions, they fall short for the reasons discussed above.  To the extent that he raises new points, they are unavailing because he does not address a number of seemingly compelling reasons offered by the administrative law judge for discounting his credibility.[10]

---

[10] These include the administrative law judge's observations that (i) although the plaintiff alleged that he did not socialize, he testified that he obtained marijuana as a "social thing," and treatment notes revealed that he had played in a band, performed in a theater group, babysat, and visited friends and relatives, (ii) two treating sources, Ms. Walsh and Lucinda Talbot, LCSW, LADC, encouraged the plaintiff to start his own business or look into computer work, and presumably would not have done so had they believed these activities were beyond his capabilities, (iii) the record contained several indications that the plaintiff exaggerated his symptoms for secondary gain, including a medical note on December 29, 2003, indicating that he was very resistant to physical therapy for back pain and to returning to full-time work, his reported statement on March 10, 2005, that most jobs required that he (*continued on next page*)

In these circumstances, there is no basis on which to disturb the administrative law judge's credibility finding.

### D.  Failure to Find a Severe Impairment of PTSD

The plaintiff finally faults the administrative law judge for failing to find a severe impairment of PTSD, or even to discuss whether he had such an impairment, in view of Dr. Sherin's diagnosis.  *See* Statement of Errors at 13-14; *see also* Record at 1217.

The plaintiff is correct that the administrative law judge erred in failing even to discuss whether he had a medically determinable PTSD impairment and, if so, whether it was severe. *See* Record at 490-91.  Nonetheless, "[a]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim."  *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

At oral argument, the plaintiff's counsel contended that the error was not harmless because the PTSD diagnosis bolstered both Dr. Sherin's opinions and the plaintiff's own testimony.  He observed that the diagnosis explained why the plaintiff could function well sometimes but then, at other times, deteriorated and flew into rages, as a result of which the administrative law judge's reliance on evidence of the times of higher functioning was misplaced.  Nonetheless, as discussed above, the administrative law judge supportably rejected Dr. Sherin's opinion of the functional restrictions caused by the plaintiff's mental impairments,

---

make his career his first priority, but he thought that his daughter should be his first priority, and his reported statement on August 16, 2006, that he wanted disability so that he would not have to worry about the necessities of life and could earn money from creative endeavors such as music and photography, and, (iv) although the plaintiff stated that he left work in 2004 because of back pain and difficulty interacting with others, he made no attempt thereafter to seek work that might be more appropriate in view of those alleged problems.  *See* Record at 503-04.

including any PTSD, and found the plaintiff's testimony unworthy of credence.  The error, thus, was not outcome-determinative.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of September, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge